Common Pleas Court of Franklin County.

SNYDER, D. B. A. THE SUPERIOR CONFECTION CO.
v. MCCUNE ET AL.

Decided April 1, 1931.

*Paul M. Herbert* and *Jos. McGhee,* for plaintiff.

*John L. Davies, Baxter Evans* and *Chas. R. Petree,* for defendant.

RANDALL, J.

In this action the plaintiff seeks to enjoin the defendants from seizing certain so-called mint vending machines which the defendants claim to be gambling devices.

The petition alleges that plaintiff is the sole owner of a business in the city of Columbus, Ohio, which he operates under the name of the Superior Confection Company; that he is engaged in the business of manufacturing, selling and distributing Superior high grade candy mints; that in connection with said business he owns and operates a factory in the city of Columbus, Ohio, in which he has installed equipment and machinery for the manufacture and packing of said mint confections; that he also carries in stock at said factory large quantities of mixing and flavoring sugar and other materials necessary

to the manufacture of said mints; that he employs some 20 or 30 people in said factory and uses approximately 25 barrels of cane sugar daily in the manufacture of mints; that the output of said mints from said factory amounts to about 125,000 packages containing 10 mints each daily with a net weight of three-fourths of an ounce to each package and that said packages of mints have a retail value of five cents and that they are a kind and quality that is standard in manufacture and equal in quality to other mints now on the market retailing at five cents per package.

Plaintiff further alleges that he also operates in the city of Columbus, a factory in which he manufactures automatic vending machines, which are used and usable by him to the trade. That said factory is equipped with dies, tools, patterns and machinery of an expensive character which is used in the manufacture of said vending machines and that he employs approximately 50 persons in said factory in manufacturing and assembling said machines. That plaintiff owns the buildings in which said factory is housed; that he has invested in said factory and the machinery and equipment therein $150,000.

Plaintiff further alleges that he distributes the output of his mint factory to the retail trade principally through the medium of said automatic vending machines. That in the month of November, 1930, he entered into a contract with the Como Confectionery, 3244 North High Street, the Hi-Way Restaurant, 1009 West Broad Street, and the Honey Bee Restaurant, 1491 East Main Street in Columbus, a copy of which contract is inserted in the petition and which contract is in the nature of a lease to said parties of his certain mint vending machine known as the Superior Automatic Salesman. That said machine is to be used by said parties in their respective places of business for the advertisement and sale of mint confections to be furinshed by plaintiff exclusively. That said machines are to be equiped with an automatic coin return device which will return the coin and automatically throw the machine out of order when same is ,empty of mints.

The contract further provides that plaintiff will keep the mint magazine full of mints at all times, said mints to be of a kind and quality equal to standard mints selling in the open market for five cents per package; that the lessee will not operate any other mint machines belonging to himself or another, that the lessee will not redeem any tokens obtained from the said machine for either cash or merchandise, that he will not buy nor suffer anyone else to buy or obtain any of said tokens in any manner whatsoever either for cash or trade. On violation of this condition the contract is to become null and void and plaintiff has the right to remove the same from the premises. The contract then provides for the distribution of the receipts of said machine, and further provides that plaintiff shall have the sole and exclusive right to open up the machine for the purpose of removing the money and tokens as well as putting tokens into the machine, with the right of the lessee to be present when this is done.

Said contract further provides for the termination of said contract at the will of either party.

The plaintiff then alleges that he delivered machines to each of the said named parties supplied with mints, and that in the month of November, 1930, the defendants, without any authority of law, without a writ of legal process, took said machines from the place of business of said parties and that the defendant, John P. McCune, threatens to destroy the same without any order of court or process whatsoever, and without placing said mint vending machines under the jurisdiction of any court. And, that, unless the defendants be restrained they will break up and destroy the plaintiff's mint vending machines so seized, to the irreparable damage and injury of the plaintiff.

The plaintiff then alleges that he has entered into a contract with three hundred merchants in the city of Columbus, Ohio, on the same terms as contained in the contract hereinbefore referred to and that the defendant, John P. McCune, as Director of Public Safety, has notified him that if said machines were installed under the

terms of said contract in the city of Columbus, that he would cause the same to be seized and confiscated without any writ or process being issued authorizing the same to be done and without any order of court; that plaintiff is, because of said threats, unable to carry out the terms of said contract and to pursue his legitimate business and that he is unable to do any business in the city of Columbus, and the defendants are preventing the expansion of his business within the jurisdiction of this court and will drive said business out of jurisdiction of this court, unless defendants are restrained from further interference with the sale of his product through the medium of said vending machines.

Plaintiff further alleges that unless an injunction issues it will be necessary for him to prosecute a multiplicity of suits against said defendants and other persons who may interfere with the handling or prevent the operation of his business, all of which will work an injury and great hardship upon him and cause him irreparable injury for which he has no adequate remedy at law. He prays for an injunction restraining the defendants, and each of them, from issuing orders to seize and confiscate his vending machines without any warrant or authority of law and restraining them from interfering in any way, directly or indirectly, with the sale of mint confections manufactured by him through the medium of said vending machines when the same are installed.

To the petition, the defendants, for their first defense, admit their official capacity and admit that the Division of Police of the city of Columbus, did seize certain slot machines which had been installed by the plaintiff in the several places referred to in the petition, and that said slot machines were taken without any process issued or charges of violation of law filed, and that the defendant, John P. McCune threatens to break up and destroy plaintiff's slot machines wherever found. Then follows a general denial of the allegations of the petition.

For a second defense, after making the same admissions as in the first defense, the defendants allege that all of the slot machines seized and sequestered by the Division

of the. Police, including the three machines referred to, are now and were at the times stated in the petition, gambling devices; that no property rights can or do exist therein and that the said seizures and sequestrations were made by the defendants pursuant to the exercise of the police power conferred upon them by the statutory and common laws of the state of Ohio.

To the answer of the defendants the plaintiff files a reply denying each and every allegation contained in the answer that does not admit the truth of the allegations of the petition.

The evidence adduced at the trial warrants the following conclusions as to the 'facts; that plaintiff's claims as to the investments made by him in the manufacture of mints and in the manufacture of the machines in question are true, and although some question was made as to the quality of the mints produced by plaintiff, we are inclined to believe that the packages compare favorably in size and quality with other mints of a similar character which retail for five cents per package.

Three so-called mint vending machines were brought before the court and their operation exhibited. Two of the machines in question, being defendants' Exhibits A and B, were machines taken by the defendants from the Como Confectionery on North High street and from the Hi-Way Restaurant on West Broad street. The third machine brought to court, which was marked defendant's Exhibit C, the evidence discloses, was not the property of the plaintiff.

In operation of these machines, upon the insertion of a five cent coin is the same as said machines were being operated when seized by the defendants, a standard five cent package of mints would be discharged, but in order to secure the mints a second operation is necessary by the turning of a knob at the lower right side of the machine. The evidence further shows that, at times which are uncertain or unknown to the player before inserting a coin, in addition to the mints delivered, the machine will also deliver metal tokens or slugs ranging in number from two to twenty, according to the particular combination which

turns up on the disks of said machine in said operation. These slugs or tokens are about the size of a five cent coin and have a hole in the center. We find that at the time said two machines hereinbefore referred to were seized, that the officers did not see them in operation, but the evidence does disclose that the machine located in the Como Confectionery was operated before being seized. There is no evidence, however, that said machines were operated in any other manner or form than as above described, that is, that they delivered mints with each operation and on occasion metal slugs or tokens varying in number.

The evidence further discloses that the back of said machines is of metal and that the same is locked; that the proprietors of the stores where said two machines were located did not have keys to said machines and that the proprietors of said places were instructed, when the machines were delivered that they were not to redeem slugs delivered by the machine for cash or merchandise, but that said slugs were for the purpose of being replayed into the machine.

The operation of said machine as exhibited in court disclosed, that when a slug or token is inserted no mints will be delivered, but that on occasion additional slugs will be delivered, varying in number according to the combination which turns up in the operation.

The evidence further discloses that there is a miniature baseball diamond on the front of said machine and that by successive operations of the machine a baseball game may be played, and players advanced on the bases, in accordance with the combinations or symbols which turn up on the disks in the front of said machine upon the operation of the same; that this game can be played by the insertion of slugs alone.

The evidence further discloses that when the back of said machine is unlocked and removed that by a comparatively simple operation, consisting of the removal with a pair of plyers of a small cotter pin and the removal of a short metal rod, the machine is at once converted into one which, upon the insertion of a five cent piece,

will in addition to the delivery of a package of mints, deliver at uncertain times a varying number of nickels, from two to twenty at a time, according to the combinations which turn up upon operation of the machine. In other words, the machine becomes a pure gambling device.

This being an action for an injunction in a court of equity, the question before the court is whether or not such relief can be granted upon the facts hereinbefore related.

In the first place we are to consider whether or not there is anything about the machine in the condition it was, when found by the defendants, and as it was operated before the Court, before the back was removed, which classified it as a gambling device. In the operation of the baseball or amusement feature of said machine, the player secures amusement and entertainment just as he does by playing the ordinary golf machine, and various other devices, which are common at the present day. In these amusement devices the player inserts a five cent piece into the machine in order to secure the privilege of playing the game. In the baseball game, which can be played on the machine in the instant case, slugs or tokens may be used, and the question arises as to whether or not these slugs or tokens do not have value, in the sense that the player places a value upon them, by using them in securing amusement and entertainment. This question has been discussed by counsel for defendants in their briefs, and they cite the case of *Scott* v. *State*, 107 Ohio St., 475, to sustain their contention. There seems to be valid reasons supporting this theory, but we do not feel called upon to determine the matter on this point, as there apparently is another very valid basis upon which we can reach a conclusion.

It must be remembered that this is a case invoking chancery jurisdiction and, therefore, is to be distinguished from the case of *State* v. *Krauss*, 114 Ohio St., 342. In the *Krauss* case, the court very aptly observed, at page 349 of the opinion, in distinguishing said case from the decision in the case of *Snyder* v. *Swope*, 23 O. L. R., 361:

"The case of *Snyder* v. *Swope, Director of Safety*, 23 O. L. R., 361, the case decided by the Court of Appeals of Fairfield County, with which this case is certified as being in conflict, was a civil action for an injunction restraining the safety director of the city of Lancaster from interfering with the operation of certain candy vending machines.

"In the Snyder case the conclusion of the Court of Appeals was based upon the principles of equity applicable to the granting of injunctive relief in a civil action, whereas in the case at bar the Court of Appeals of Hamilton county was dealing with a criminal case, and the paramount question before it was whether or not the record disclosed sufficient proof of each and every element going to make up the offense charged in the affidavit to sustain a conviction by evidence beyond the existence of a reasonable doubt.

"We think the records before the two courts of appeals were so essentially different, and the principles of law applicable thereto of such dissimilar character, that the respective conclusions reached to not constitute a conflict of opinion. This case is a criminal one and requires the application of the well-known principles applicable to criminal cases."

Counsel for plaintiff have pointed out that it is not an offense, even to have a gambling device in one's possession under the laws of Ohio, and in order for the Supreme Court to sustain a conviction in the Krauss case, it was necessary for it to find, beyond a reasonable doubt, that defendant had violated Section 13066 of the General Code, by keeping or exhibiting for gain, or to win or gain money or other property, a gambling table or a gambling device or machine. The court observes in the opinion, page 350:

"In the light of the meager record presented in this case we are unable to find that the state showed, beyond the existence of a reasonable doubt, the essential elements going to make up the offense charged, and we are therefore led to the same conclusion reached by the Common Pleas Court and Court of Appeals, to-wit. that the record does not show sufficient to sustain the judgment of the justice of the peace."

In a court of law in a criminal case the maxim of

equity that relief will not be granted to one who does not come into court with clean hands, does not apply.

In the case of *Walker Zimmerman* v. *Ohmer Tate*, 326, in the Court of Appeals of Green County, the Judges of our own Court of Appeals in passing on the application of the plaintiff for an injunction, seeking similar relief as in the instant case, observed:

"Concerning the second type of machine we learn from the evidence that which does not appear from the petition. It is testified and not denied that in this machine there is a rod which is removable and that by its removal the machine, itself, will pay money instead of mints, or checks and that this is done by the identical operation involved to secure mints or checks. We must assume that the plaintiff placing these machines with merchants has knowledge of their mechanical construction and of their ability as a gambling device."

It is true that in the Tate case, the evidence disclosed that money was found in the slot which ordinarily contains checks, and that case differed from the case at bar further, in the fact that on another ground the court found that the plaintiff did not come into court with clean hands because he was using a copyright issued to another. In the Tate case also, the particular machines in question had been seized after the arrest of the party who had been operating the same, and the court found that the said machines were used for gambling purposes. However, the court indicates in the portion of the opinion above quoted, that because of the removable rod, the machine is adaptable as a gambling device.

In the case of *Steed* v. *Tate*, 331 in the Court of Appeals of Greene county, same court, an application was made by the plaintiff to restrain the defendants from interfering in any manner, with the business of the plaintiff in error or any merchant, with whom he placed what is known as a baseball mint vending machine, and from directly or indirectly confiscating such mechanical device, and for such other relief as is proper. The machine evidently was identical with the baseball machine involved in the case at bar. This case presented facts very similar to the case at bar, with the exception that proof was

made of the redemption of checks or tokens. However, the court in the opinion makes this pertinent observation:

"A mere statement of the facts in this case is sufficient to support the judgment of the trial court in refusing the extraordinary relief of injunction to the plaintiff in error. The proof not only discloses that machine was a gambling device, but that it was being so employed in the store in which it was placed, and the plaintiff in error cannot be heard to say that he should not have known that it would be so used."

It will be noted that the court says that the proof discloses that the machine "was a gambling device," and that, in addition, it was so used, the inference being that regardless of whether or not the machine was used as a gambling device, it was in fact one. The court, on page 3 of this opinion, also observes:

"All the elements constituting a gambling device are found in the machine which the sheriff seized in this case, and we know of no reason whatever appearing in the record which would justify the court in granting the relief sought."

In our own Federal Court for the Southern District of Ohio, in the case of *Morris* v. *Village of London,* Madison county, Leroy Cornwell, Mayor of the village of London, and Edward Taylor, Marshall of the village of London, defendants, No. 535 in equity, the Honorable Benson W. Hough, Judge of said court, was called upon to enjoin the defendants perpetually and all persons having knowledge of the order, or procuring knowledge of the order, within the jurisdiction of the court, from in any manner interfering with the business of the complainant and the merchants contracting and doing business with him, in the sale of mints by the use of a certain slot machine. They appealed to the court for protection under the "due process" and equal protection" provision of Article 14, Section 1 of the Constitution of the United States in relation to claimed property rights. The machine involved was similar, though not identical, with the machine involved in the case at bar, and similar allegations are made as to the investment of substantial sums

of money for merchandise and equipment and with reference to contracts with merchants in the village of London and elsewhere for the sale and distribution of said mints. The court described the machine involved in that case as follows:

"A mechanical device owned by the complainant, being a slot machine of ordinary appearance and dimensions. The machines have a plate fastened upon the front or face thereof, upon which the following language appears.

'*Silent Salesman.* Deposit a five cent coin, and receive a five cent package of candy mints. With this purchase you will receive blank coupons, which if not received in violation of the restrictions below, will be erdeemable in trade only at the value of five cents each.

'*Restrictions*: Operating this machine with anything but a U. S. five cent coin, or making two or more consecutive purchases herein, positively prohibited. Copyright 1923 by John Morris.'"

The operation of the machine is further described as follows:

"By placing a five cent United States coin in a slot and pulling a lever, the operator will in every instance receive a package of mints, in quality and size as customarily retailed at five cents. In addition thereto, player will receive as many metal coupons or checks as the numeral in the glass window indicates he will receive, before the nickel is inserted or the lever pulled, unless the word 'No' appears, in which event he will receive no coupon, but will receive a package of mints. If coupons are received on any consecutive operation of the machine, they are valueless and cannot be redeemed in trade nor played on the machine without violating the restrictive conditions set out in the copyright and attached to the machine. Should a coupon or check be played into the machine, coupons and checks received from such play have no value; neither does the player receive a package of mints when a coupon is played into the machine. A five cent United States coin is the only means of playing the machine so as to secure in exchange a package of mints and coupons redeemable in trade."

It will be noted that in the machine involved in that case, checks received on the first operation were redeemable in cash, although there is nothing in the opinion of the court, indicating that a redemption for cash was

shown. In his opinion, Judge Hough, makes the following comment upon the case of *State* v. *Krauss,* 114 Ohio State, 342:

"The claim is made that the *State* v. *Krauss,* 114 Ohio St., 342, decided by the Supreme Court of Ohio in 1926, being the latest expression of the court of last resort in Ohio, is controlling and conclusive in the instant case.

'In that case the Supreme Court had before it for consideration upon the record, a criminal prosecution certified to it by the Court of Appeals of Hamilton county, Ohio, under a certificate of conflict with the decision of the Court of Appeals of Fairfield county, in the case of *Snyder* v. *Swope, supra.* If the effect of this decision may be interpreted to be that as claimed by the complainant, this court would be inclined to follow, and very likely would be bound to follow the interpretation placed upon the question by the state Supreme Court. An analysis of the *per curiam* opinion of the court, however, fails to bring us to the conclusion claimed for the decision. That court had before it the record of a prosecution in which a slot machine identical with the one here was involved, but the court rested its conclusion, not upon the quantum of proof, but upon the failure of the proof so far as it applied to one of the material elements of the offense. The court speaking on page 347 of the report says:

'This record fails to show that the checks received as a result of the consecutive play by the state's witness were redeemed or even offered for redemption in trade at the store of the defendant. Until something was received, or to be received in the future, as a result of the operating of the so-called gambling device we fail to see how there could be a violation of the statute. As far as the evidence goes the machine operated as a merchandise vending device simply, and the features of the machine which might make the same a gaming device were not utilized by the state's witness, nor shown by the evidence adduced."

"Moreover, the court limits the effect of its decision to the record as presented, and intimates a distinction that might arise between the question presented to it in a criminal prosecution, and one arising in equity, as was presented to the Court of Appeals in the case of *Snyder* v. *Swope, supra,* and the Supreme Court inferentially upholds the conclusion arrived at by the Court of Appeals in the *Snyder* v. *Swope* case,, *supra,* when it uses the following language found on page 349:

'The case of *Snyder* v. *Swope*, Director of Safety, 23 O. L. R., 361, * * * with which this case is certified as being in conflict, was a civil action for an injunction restraining the safety director of the city of Lancaster from interfering with the operation of certain candy vending machines. In the Snyder case the conclusion of the Court of Appeals was based upon the principles of equity applicable to the granting of injunctive relief in a civil action, whereas in the case at bar the Court of Appeals of Hamilton county was dealing with a criminal case, and the paramount question before it was whether or not the record disclosed sufficient proof of each and every element going to make up the offense charged in the affidavit to sustain a conviction by evidence beyond the existence of a reasonable doubt. We think the records before the two Courts of Appeals were so essentially different, and the principles of law applicable thereto of such dissimilar character, that the respective conclusions reached do not constitute a conflict of opinion.

'And as evidence of the limitations which the Supreme Court placed upon its decision in the Krauss case, it said on page 350:

'But until a record is presented which shows consecutive plays, or consecutive alternate play, or some other manner of play, as a result of which premiums, checks, or coupons are received, which secure to the player or players something for nothing as result of his play, we fail to see how there can be a violation of the statute.' "

The court, in its opinion, further traces the history of the evolution of slot machines and the various subterfuges used to bring them within the purview of the law, and says that the Morris machine, which it had under consideration at the time is claimed to "eliminate the last vestige of judicial objection to the lawfulness of the device."

The court further observes:

"Even then a check tendered in trade, non-redeemable under the rules, tendered at a subsequent time, that is, the next day, the next week, or at any future time, could not be identified or detected. The admonition not to do so and so, specified by rule, together with the absence of other restriction, except the wording on the plate, physically or otherwise, becomes an invitation and encouragement to the players to disregard rule and regulation, and to play the machine to win something for nothing. Such

would be the natural, human, apparent and most obvious result in practice.

"Whether the operation of the machine according to the letter of the rule, would render it innocuous as a gambling device or not, it certainly would make it innocuous as a 'Silent Salesman' of mints. Without the ingenious attraction to the element of chance, the salesmanship of the 'Silent Salesman' would be negligible. This, in so far as its operation is concerned, the results would be substantially the same as in the operation of those machines held by the courts to be gambling devices, which were not equipped with the copyrighted plate with the restrictive wording, and the term 'subterfuge' may with reason be applied thereto."

Judge Hough makes the following observation:

"To arrive at a conclusion in the instant case, it is not necessary to go to the extent of determining the classification into which the machine should be placed, that is, whether it is a vending machine to be lawfully used in a lawful trade, or whether the machine is to be judicially stamped as a gambling device, independently of the nature of its operation and use.

"The manner of practical operation and the obvious results therefrom, may be anticipated with certainty, evidenced by the presence of the human equation and the fact that successful results may only be obtained in the way indicated.

"To grant the relief sought in this case by enjoining the administrative and judicial officers of the village of London and of the cities and other villages in this judicial district and elsewhere, under the facts and circumstances of this case, is asking too much of a court of equity.

"An effective decree in harmony with the prayer of the bill, would place the court in a position, irrespective of the facts in any given case, of suppressing appropriate prosecution and preventing those officers in the performance of their official and sworn duty.

"The case which the complainant makes is without equity. Relief is denied and the bill dismissed."

Although we realize that there are many elements in the case at bar which distinguish it from the case decided by Judge Hough, nevertheless the portions of the opinion quoted certainly support the conclusion that the Krauss case should be distinguished from the case at bar. The

opinion of Judge Hough is further enlightening, in his discussion of the broad general principles involved in an equity proceeding in such a case, and the attitude the court should assume, as he goes so far as to say that "it is not necessary to go to the extent of determining the classification into which the machine should be placed, that is, whether it is a vending machine to be lawfully used in a lawful trade or whether the machine is to be judicially stamped as a gambling device, independently of the nature of its operation and use."

We feel the general attitude of the court in this case, here in our own immediate jurisdiction should be given the weight to which it is entitled inasmuch as the court in its opinion was following, and was bound to follow the law as it exists in the state of Ohio.

Since the trial of this cause we were attracted by a newspaper item in the New York Times, under date of February 28, 1931, where an injunction was sought by the Triangle Mint Corporation in Brooklyn against Edward P. Mulrooney, as Commissioner of Police of the Police Department of the city of New York, and named all members of the Police Department of New York appellants. By correspondence we have secured a copy of the brief decision in that case which, although a full statement of facts, is not given, reflects very strongly upon the one feature of the case at bar, to-wit, the device in said machine, whereby, by the withdrawal of a small cotter pin, the machine is converted into a gambling device. A copy of the decision is as follows:

"Feb. 26, 1931.

"88E. Triangle Mint Corporation, respondent, vs Edward P. Mulrooney, as Commissioner of Police of the Police Department of the City of New York, and any and all members of the Police Department of the City of New York, appellants.

"Judgment reversed upon the law and the facts, with costs, and complaint dismissed, with costs. While the use of the machine, with the cotter pin inserted, may be innocent enough, save for the possibility of a storekeeper's exchanging the tokens or slugs for merchandise or cash, of which there is no proof here, the extraction of the cotter pin makes the machine a slot machine in vio-

lation of Sections 970-a and 982 of the Penal Law. These machines are undoubtedly manufactured and leased for gambling purposes, with the insertion of the cotter pin as a cloak or cover therefor. The police were justified in seizing them. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Lazansky, P. J., Kapper and Scudder, JJ., concur.

Hagarty and Carswell, JJ., concur in result.

"Settle order on notice."

This case was decided by the Appellate Division in Brooklyn, and it is interesting to note, that the decision says, that there was no proof that tokens were exchanged for merchandise or cash.

In conclusion, it is our opinion that the so-called baseball mint vending machine, in the case at bar was especially designed and constructed and is now, and was at the time the two machines were confiscated by the police, potentially a gambling device, notwithstanding the fact that the proof fails to show that checks were redeemed, for cash, or merchandise by the proprietors where the two machines, marked Exhibits A and B, were located before their seizure by the police. We base our conclusions upon the fact that the plaintiff possessed the key to said machine and held the power, if he so desired, at any time to open said machine, or permit the proprietors where said machines were located to do so, and by a simple operation convert said machines into money paying machines which, upon the insertion of a five cent coin would, in addition to the vending of a package of mints with each operation, from time to time deliver, upon the turning up of certain combinations, five cent coins, varying in number from two to twenty at times uncertain to the player. The mechanism of the machine is complex, and the operation by which the change results, when the cotter pin is removed, is very simple. If the machine in question is a mere vending device, as claimed by the plaintiffs, what would be the need for the complex mechanism and the vending of slugs or tokens, which plaintiff claims are of no value, and which will not deliver mints upon their insertion in the machine. The answer is, that it makes the machine attractive, and

the testimony of one of the witnesses, where a machine was located, disclosed the great interest of the players in operating said machine, especially boys, and this witness told how he played the machine to continue the interest of the players. Furthermore, there is nothing to prevent an unscrupulous proprietor who might possess one of said machines from redeeming slugs or tokens for cash or merchandise to stimulate interest of the players, and to encourage them to spend their money, notwithstanding the contract between the plaintiff and the proprietors, and without regard to the rules of the game. Does the fact that this small cotter pin is inserted so as to prevent the delivery of money instead of checks, upon the operation of the machine, when a machine is delivered to the lessee securely locked, change the character of the machine itself? Is it not still, potentially, a pure gambling device? We are reminded of the old conundrum, "When is a door not a door," the answer being, "When it is ajar."

It is not doing violence to the record in this case for the court to assume, that the sale of mints in the ordinary course of trade is not the prime result sought to be attained through the use of this machine. The fundamental purpose of the machine as evidenced by its complex construction, and its attractiveness to the player, is to induce the player to expend money far beyond his immediate desire for the consumption of candy mints. The element of chance is the feature of the machine which appeals to the player, rather than his appetite for mints.

In the consideration of this matter we have been impelled by the facts disclosed in the record, the apparent purpose of this machine, and the practical results which may reasonably be anticipated from its unlimited use in the community, to invoke principles of common sense which will not handicap the police authorities and discourage their efforts in the proper enforcement of the law.

We have carefully considered the contention of counsel for the plaintiff, that the defendants, in the confiscation of said machines, did so without process and without any

order of court in the premises. However, in view of our conclusion that because of the relief asked and the subject matter of the controversy, a court of equity cannot entertain jurisdiction, it is not necessary for us to comment on this feature of the case, other than to say that the principles announced by counsel are well founded, where the subject matter is property of a nature cognizable in a court of equity.

From time immemorial, ways and means have been devised to appeal to the gambling instinct of men. It is true that there are many ways in which gambling may be carried on, by wager or otherwise, but schemes such as lotteries and attractive mechanical devices have a particular appeal and often result in the dissipation of funds which should rightfully go to the support of families through the legitimate channels of trade. The slot machine is peculiarly attractive to the young, and when such devices are placed in confectionary stores and other small shops, they are readily accessible to the children of the neighborhood.

In view of all the facts in this case, we are of the opinion that the plaintiff cannot invoke the jurisdiction of a court of equity to secure any of the relief prayed for, either under the original, or amended prayer.

The petition will be dismissed at the costs of the plaintiff. Exceptions.